In the Matter of ANNIE FIORE et al., Appellants, against JOHN F. O'CONNELL et al., Constituting the State Liquor Authority, Respondents.

Argued January 12, 1948; decided March 19, 1948.

*Michael S. Meyerowitz* and *Alexander Del Giorno* for appellants. I. The refusal of the authority to grant a license to the petitioners herein, was " arbitrary ", and apparently based on nothing else but mere capriciousness, without justification in fact or in law. (*Matter of Restaurants & Patisseries Longchamps, Inc., v. O'Connell,* 296 N. Y. 239.) II. Since the facts submitted by the petitioners conclusively establish that the denial of a license to them was without legal support, Special Term did not substitute its judgment for that of the authority in granting the petitioners' application directing the authority to issue a license to them, but rather corrected an abuse and injustice practiced by the authority against a veteran just as entitled to his license as the other veteran. (*Matter of Carroll* v. *Knickerbocker Ice Co.,* 218 N. Y. 435; *Interstate Commerce Comm.* v. *Louisville & N. R. R. Co.,* 227 U. S. 88.)

*Alvin McKinley Sylvester* for respondents. The authority refused to issue a license to George Fiore because he had had no business experience whatsoever, and had never saved a penny of his own. In the reasonable exercise of its discretion, and in the light of its duty to the public, it concluded that the issuance of a license under such circumstances would create a high degree of risk in the administration of the Alcoholic Beverage Control Law. (*Matter of Glintenkamp* v. *O'Connell,* 271 App. Div. 795, 296 N. Y. 806; *Matter of Roccaforte* v. *O'Connell,* 271 App. Div. 831, 296 N. Y. 938; *Matter of Watinsky* v. *O'Connell,* 271 App. Div. 973, 297 N. Y. 552; *Matter of Finn* v. *O'Connell,* 271 App. Div. 896, 297 N. Y. 607; *Matter of Restaurants & Patisseries Longchamps, Inc.,* v. *O'Connell,* 271 App. Div. 684, 296 N. Y. 888; *Federal Communications Comm.* v. *WOKO,* 329 U. S. 223; *Matter of Snetlage* v. *O'Connell,* 271 App. Div. 1015, 297 N. Y. 707; *Matter of College Point Wines & Liquors* v. *O'Connell,* 271 App. Div. 278, 296 N. Y. 752; *Matter of Pruzan* v. *Valentine,* 282 N. Y. 498; *Matter of Dusinberre* v. *Noyes,* 284 N. Y. 304.)

*Per Curiam.* It is settled that the courts will not disturb the exercise of administrative discretion vested in the State Liquor Authority by the Alcoholic Beverage Control Law unless the action complained of be deemed arbitrary or capricious. (See *Matter of Glintenkamp* v. *O'Connell,* 296 N. Y. 806, affg. 271 App. Div. 795; *Matter of Roccaforte* v. *O'Connell,* 296 N. Y. 938, affg. 271 App. Div. 831; *Matter of Watinsky* v. *O'Connell,* 297 N. Y. 552, affg. 271 App. Div. 973; *Matter of Finn* v. *O'Connell,* 297 N. Y. 607, affg. 271 App. Div. 896.) In this case, a license was issued to the veteran King after appellants' application had been disapproved, but consideration of the record before us quickly discloses differences — slight though they may seem — between the situations. The successful applicant King is several years older than George Fiore. Having worked for a living, he has enjoyed a certain business experience not possessed by Fiore, and he has revealed a measure of thrift and frugality not found in the other. The choice to be made may have been a narrow one; the determination at which the authority arrived may have been close — perhaps borderline, However, room for choice — basis for exercise of

judgment — there was, and we may not say that "analogy is so complete" between the two cases "that inference arises that the refusal [in appellants' case] is the result of unfair discrimination and oppression." (See *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 336.)

The order of the Appellate Division should be affirmed, with costs.

DYE, J. (dissenting). I dissent. On this record the disapproval of the petitioners' application under the Alcoholic Beverage Control Law for a package store permit was so lacking in support as to be arbitrary and capricious as a matter of law. In reaching this conclusion, I am mindful of the fact that the act creating the State Liquor Authority clothes it with wide discretion unhampered by restrictive definitions or by prescribed standards of conduct in its control of the liquor traffic. It is subject only to judicial review and that for the purpose of preserving due process. While we make it a rule of thumb not to interfere in the field of administrative discretion and refrain from substituting our judgment for that of the authority in cases where there is room for a difference of opinion on conflicting testimony, it does not follow that all determinations should be stamped with approval simply because the authority predicates its action on the statutory phrase "public convenience and advantage" in explanation of its disapproval. Even such a determination must be supported by the record as a reasonable exercise of discretion. A standard of reasonableness, of course, is not elusive and uncertain, but, like the prudence of the ordinary person in a given circumstance to determine negligence or freedom therefrom, such standard may be measured by the observations and experience of everyday life by the persons familiar with the subject matter as fair and equitable. I take it that in the absence of other criteria the adoption of the standards used by the board itself in a similar situation would indicate a standard of reasonableness applicable here.

It appears that the petitioners are mother and son; on February 25, 1946, they filed an application with the city board for an off-premise license at 44–12 31st Avenue, Long Island City, Queens, New York. This was approved on March 20,

1946, and forwarded to the State Liquor Authority who disapproved same on April 25, 1946, for " PUBLIC CONVENIENCE AND ADVANTAGE WILL NOT BE SERVED ". The petitioners thereupon made application to have the matter reopened which the board denied by letter dated June 4, 1946. The application shows that Annie Fiore is a housewife and, prior to her marriage, had worked for eight years selling hats at retail. There is nothing in the record showing any character disqualifications. She was putting up all the cash capital, amounting to $7,900, and also furnishing the store, located on a main business thoroughfare and which was a part of the premises owned by her and required no rental, the upper floor being occupied by the family for living quarters. The petitioner George Fiore is her youngest son, twenty-one years of age. When he finished high school at the age of eighteen, he was inducted into the armed service where he served honorably and was wounded in action in France. He had no previous business experience. The plan was that the mother was to act as his partner until such time as he was able to carry on the business alone.

The matter might have ended at this point were it not for the fact that while the petitioners' application for a rehearing was pending, one Robert W. King, under date of May 14, 1946, applied for an off-premise license at 31–07 44th Street, Queens, New York, around the corner and but 125 feet distant from petitioners' premises. (Location, however, is not at issue here.) This was approved by the board by letter dated June 13, 1946, the day following a letter written to the petitioners by the Liquor Authority explaining to the petitioners that the denial could not be reopened. The petitioners then initiated the within proceeding.

Ordinarily, we would not be concerned with the approval of the King application but, having been granted almost simultaneously with the denial of the petitioners application for rehearing, the circumstances leading to its approval by the board may be taken as an indication of the standard of reasonableness adopted by the board. The applicant, King, was twenty-five years of age. Prior to his entry into the armed service he had worked three and one-half years as a guard on a Wells-Fargo truck and, after his honorable discharge from the service, he returned to the same job as guard. His war

record is good. He proposed to finance the business with $2,920.22 in cash representing savings over a period of twelve years and the additional sum of $5,666.67 contributed by members of his family but who were not to take any part in the business.

Commissioner O'Connell, in his affidavit, found a substantial difference between the qualifications of King and the petitioners and that King was a person of "thrift and frugality" and then resorts to the expression of a series of vague generalities respecting the commission's responsibility under the statute, requiring them to issue a license only when public convenience and advantage will be served, which are not met by the petitioners' application, and leading to the conclusion that the "investment and savings might well be lost", and that denial was based "solely upon the personal qualifications, experience and background of the petitioners."

In approving the King application no such test was applied for the obvious reason that working as a guard on a truck would hardly satisfy it so his "thrift and frugality" is emphasized. Such habits are, of course, commendable but, by the same token, so is the industry and thrift of the petitioner Annie Fiore in acquiring a store block and her willingness to risk her savings to get her war-injured son started in business. It was not the fault of the petitioner George Fiore that his induction in the armed service at eighteen years of age, as soon as he finished high school, prevented him from entering a gainful employment, nor can he be too severely criticized for not making a reputation for thrift and frugality while recovering from battle wounds.

This is not a situation where two or more competing applicants have applied simultaneously for a permit in the same locality and the board has chosen between them. Not at all — these petitioners filed their application February 25, 1946, which was approved by the city board on March 20th, but thereafter, on April 25th, disapproved by the authority and rehearing denied June 13th, the day following approval of the King application which had only been pending since May 10th, and presumably met a standard of business experience, financial responsibility and potential success which distinguished it from the

petitioners' application. I am at a loss to find any such distinction. The patent inconsistency of the Liquor Authority in dealing with these almost identical situations leads to the inevitable conclusion that the denial of the petitioners' application was so lacking in support — according to its own standards — as to be unreasonable and as such to amount to an arbitrary and capricious act as a matter of law.

The order of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, THACHER and FULD, JJ., concur in *Per Curiam* opinion; DYE, J., dissents in opinion in which DESMOND, J., concurs; CONWAY, J., taking no part.

Order affirmed.